1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 | JENNIFER MACDONALD,                    No.  2:18-CV-2802-DMC

12 |                    Plaintiff,

13 |          v.                           MEMORANDUM OPINION AND ORDER

14 | COMMISSIONER OF SOCIAL
15 | SECURITY,

16 |                    Defendant.

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the written consent of all parties (ECF Nos. 7 and 8), this case is before the

21  undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22  U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits (ECF Nos. 16, 17,

23  and 18).

24          The Court reviews the Commissioner's final decision to determine whether it is:

25  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26  whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27  more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28  (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

Step 4  If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5  If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

<u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. <u>See</u> <u>Quang Van Han v. Bower</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. <u>See</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. <u>See</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>Hammock v. Bowen</u>, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on September 24, 2014.  See CAR 17.[1] In the application, plaintiff claims disability began on July 10, 2010.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 17, 2017, before Administrative Law Judge (ALJ) Michael A. Cabotaje.  In an August 25, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): facet degenerative joint disease of the cervical and lumbar spine, obesity, anxiety, depression, and panic disorder without agoraphobia;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: light work except she can occasionally climb, she can frequently balance, stoop, kneel, crouch, and crawl, and she can occasionally tolerate changes in a routine work setting;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, claimant can perform past relevant work as a blood and plasma lab assistant.

See id. at 20-27.

After the Appeals Council declined review on August 13, 2018, this appeal followed.


## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in failing to reopen plaintiff's prior claim; (2) the ALJ improperly evaluated the medical opinions; (3) the ALJ improperly rejected plaintiff's credibility; (4) the ALJ failed to properly evaluate lay witness evidence; and (5) the ALJ's findings at Step 4 was not supported by substantial evidence.

/ / /

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on April 11, 2019 (ECF No. 13).

4

**A.** **Prior Claim**

Regarding plaintiff's prior claim, The ALJ stated:

> The undersigned declines to reopen a prior concurrent claim for disability benefits.  There is a final initial determination dated on or about May 7, 2014, on a prior concurrent disability claim, which found the claimant not disabled.  The previous determination is not being reopened, and the undersigned finds no good cause to do so after a review of the evidence during the unadjudicated period from May 8, 2014, through September 23, 2014.  A review of medical source reports and opinion supported the conclusion that claimant retained the residual physical and mental capacity to perform basic work activities.  Accordingly, in finding these reports and opinions persuasive, the undersigned finds no new, additional material evidence which provides sufficient grounds for reopening the prior initial determination.  (citations omitted).

CAR 17.

Plaintiff argues the ALJ erred in failing to reopen the prior claim.  According to plaintiff:

> Macdonald filed a prior claim for Title II benefits on 2/21/14, which was denied on 5/7/14. (Tr. 79.) At the hearing on 5/17/17, Macdonald's counsel requested reopening of the prior claim based on 20 C.F.R. §§ 404.988 and 404.989 because Macdonald's new applications (filed in October 2014) were denied less than one year from the date of the prior denial. 20 C.F.R. § 404.988(a) provides that a prior decision may be reopened within 12 months of the date of the notice of the initial determination.  (Tr. 42-43.) The ALJ declined to reopen the prior claim because the ALJ asserted there was no showing of "good cause" established and there was no new, additional material evidence providing sufficient grounds for reopening. (Tr. 17.) Contrary to the ALJ's assertions, as noted in the above regulations, "good cause" is not required for reopening a claim if the new applications were denied within 12 months of the prior denial, as is the case here. This is significant here because, as will be discussed in more detail below, the ALJ improperly rejected critical medical evidence, which might have been part of the prior claim, based on the ALJ's mistaken belief that good cause was needed to reopen the prior claim. (Tr. 26.)

ECF No. 16, pgs. 14-15.

The Court agrees with defendant that the ALJ's discretionary denial of plaintiff's request to re-open her prior claim is beyond this Court's review.  See Taylor v. Heckler, 756 F.2d 872, 877 (9th Cir. 1985); Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985); see also 20 C.F.R. § 416.1403(a)(5) (denial of request to re-open not subject to judicial review).

/ / /

1    **B.      Medical Opinions**

2           At Step 4, the ALJ evaluated the medical opinions of record.  See CAR 24-27.

3    Plaintiff argues the ALJ erred in failing to properly consider the opinions of Drs. Jahangiri and

4    Van Gaasbeek.

5           "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

6    533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

7    explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

8    2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

9    opinion over another.  See id.

10          Under the regulations, only "licensed physicians and certain qualified specialists"

11   are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

12   674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

13   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

14   rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

15   1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

16   substantial evidence when the opinions are consistent with independent clinical findings or other

17   evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

18   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

19   Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

20   also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

21   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

22   workers may be discounted provided the ALJ provides reasons germane to each source for doing

23   so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

24   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

25   when opinions from "other sources" may be considered acceptable medical opinions).

26   / / /

27   / / /

28   / / /

6

1        The weight given to medical opinions depends in part on whether they are

2    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

3    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

4    professional, who has a greater opportunity to know and observe the patient as an individual, than

5    the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

6    Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

7    opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

8    Cir. 1990).

9        In addition to considering its source, to evaluate whether the Commissioner

10   properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

11   the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

12   uncontradicted opinion of a treating or examining medical professional only for "clear and

13   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15   by an examining professional's opinion which is supported by different independent clinical

16   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17   1041 (9th Cir. 1995).

18       A contradicted opinion of a treating or examining professional may be rejected

19   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

20   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

21   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

22   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

23   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

24   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

25   without other evidence, is insufficient to reject the opinion of a treating or examining

26   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

27   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

28   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

7

1  also Magallanes, 881 F.2d at 751.

2        1.      Dr. Van Gaasbeek

3  Regarding Dr. Van Gaasbeek, the ALJ stated:

4        On April 10, 2014, the claimant was evaluated by Dr. Kyle Van Gaasbeek,
        a clinical psychologist (Ex. 5F/3).  The psychologist diagnosed: Axis I:
5        Panic disorder without agoraphobia; Axis II: Deferred; Axis III: Chronic
        pain due to spinal arthritis Hyperlipidemia; Axis IV: Unemployment
6        Financial tightness; and Axis V: GAF = 45 (Ex. 5F/6).  He opined the
        claimant retained an ability to perform simple and repetitive tasks without
7        impairment.  Her ability to perform detailed and complex tasks is
        unimpaired.  The claimant's ability to accept instructions from supervisors
8        is unimpaired.  The claimant's ability to interact with coworkers and the
        public is substantially impaired.  The claimant's ability to perform work
9        activities on a consistent basis without special or additional instruction is
        unimpaired.  The claimant's ability to maintain regular attendance in the
10        workplace is substantially impaired.  The claimant's ability to complete a
        normal workday without interruptions from a psychiatric condition is
11        substantially impaired.  The claimant's ability to deal with the usual stress
        encountered in the workplace is substantially impaired (Ex. 5F/6-7).
12
        CAR 26.
13

14  The ALJ concluded Dr. Van Gaasbeek's 2014 opinion "is relative only to the prior applications

15  that were denied in May 2014, which I decline to reopen."  Id.

16        According to plaintiff, the ALJ's conclusion that Dr. Van Gaasbeek's 2014

17  opinion was not relevant to the current claim is flawed because the ALJ erred in declining to re-

18  open the prior claim.  See ECF No. 16, pg. 15.  This argument is meritless.  See Green v.

19  Berryhill, 731 F. App'x 596, 598 (9th Cir. 2018) (unpublished) (citing Hiller v. Astrue, 687 F.3d

20  1208, 1212 (9th Cir. 2012), and concluding that, where the ALJ declines to re-open a prior

21  disability application, an opinion that predates the relevant period on the current application was

22  appropriately rejected).[2]

23  / / /

24  / / /

25  / / /

26  / / /

27  _____

28        [2]      While unpublished decisions from the Ninth Circuit are not binding, the Court
        nonetheless finds the conclusion persuasive and supported by citation to published authority.

1

2.      Dr. Jahangiri

2

As to Dr. Jahangiri, the ALJ stated:

3

On January 30, 2017, Dr. Wasfa Jahangiri, a family physician at La
Clinica Vallejo, completed a medical source statement diagnosing back
pain, anxiety and panic attacks (Ex. 16F/1-5).  He felt the claimant's
prognosis is fair with treatment.  He outlined symptoms of low back and
neck pain, right leg and thigh pain, anxiety, and panic attacks.  He also
noted chronic obstructive pulmonary disease and that the claimant uses
inhalers.  He referenced the claimant's complaints of low back pain,
stiffness, radiation to the right leg, cramping in the legs and arms, bilateral
foot swelling, and shortness of breath on exertion.  He noted the claimant
has a history of being on pain medication for about seven years, specialist
treatment, and multiple injections in her back.  He felt the claimant was
not a malingerer and opined that depression, anxiety/panic attacks and
sleep disturbance affected the claimant's physical condition.  He opined
that the claimant's experience of pain or side effects of medication was
severe enough to occasionally interfere with attention and concentration
needed to perform even simple work tasks.  He opined the claimant could
only walk one city block without risk of severe pain.  Further, he opined
the claimant could sit 20 minutes and stand 30 minutes, but he found it
difficult to assess objectively how long the claimant could sit, stand and
walk total during an eight-hour workday with normal breaks.  He also
opined the claimant needed some walking around during an eight-hour day
but found it difficult to make an objective assessment of approximately
how often the claimant should walk around.  He felt the claimant needed a
job that permitted shifting positions at will from sitting, standing or
walking due to pain and paresthesias, and she would need to take
unscheduled breaks, for about 20 minutes, during an eight-hour workday.
Also, the claimant would need to elevate her legs up to about 1 foot height
whenever she is sitting down.  He felt the claimant did not need a cane or
other assistive device.  He assessed the claimant could frequently lift and
carry less than 10 pounds, rarely lift and carry 10 pounds, and never lift
and carry 20 or more pounds.  Further, the claimant can frequently look
down (sustained flexion of neck), turn her head right or left, look up, and
hold her head in static position.  She can occasionally twist, stoop, climb
ladders and climb stairs but rarely crouch or squat.  The medical source
could not assess the percentage of time during an eight-hour working day
that the claimant could use her hands, fingers or arms for manipulative
functions.  The claimant's impairments were likely to produce good and
bad days and she would likely be absent from work more than four days
per month.  He indicated that all of the limitations in his report first began
approximately in 2011.

CAR 25-26.

25

/ / /

26

/ / /

27

/ / /

28

/ / /

9

1          The ALJ found Dr. Jahangiri's opinions "less persuasive."  CAR 26.  The ALJ

2    stated:

3          The opinion from a treating source family physician is found to be less
           persuasive.  Dr. Jahangiri opined about the claimant's mental functioning,
4          but this is outside the area of expertise and inconsistent with improvement
           shown with treatment.  Further, Dr. Jahangiri's opinion that the claimant's
5          pain or side effects of medication were severe enough to occasionally
           interfere with attention and concentration needed to perform even simple
6          work tasks is inconsistent with the opinion of the psychological
           consultative examiner, Dr. Gaasbeek, who found that the claimant had no
7          impairment in her ability to perform simple and repetitive tasks.  Dr.
           Jahangiri was also equivocal and uncertain in his opinion.  He found it
8          difficult to assess objectively how long the claimant could sit, stand and
           walk total during an eight-hour workday with normal breaks; and he found
9          it difficult to make an objective assessment of approximately how often
           the claimant should walk around.  Dr. Jahangiri's opinion was also
10         internally inconsistent.  He found standing and walking limitations but
           said that the claimant did not need a cane or other assistive device.  The
11         extreme limitations found by Dr. Jahangiri also are inconsistent with the
           record as a whole.  For example, Dr. Jahangiri could not assess the
12         percentage of time during an eight-hour working day that the claimant
           could use her hands, fingers or arms for manipulative functions, but
13         according to treating records, there was no evidence of an impairment that
           would limit manipulative functioning (Ex. 10F-11F).  Accordingly, the
14         doctor's opinion is found to be less persuasive because it is inconsistent
           with treating records and the overall record (Ex. 10F/4-5, 9, 13, 15-16, 20,
15         28, 30, 36-37, 40-41, 45; 13F/17).

16   CAR 26-27.

17   According to plaintiff:

18         The ALJ gave less weight to Dr. Jahangiri's opinion, asserting Dr.
           Jahangiri commented on Macdonald's mental health despite not being a
19         mental health expert. The ALJ also asserted Dr. Jahangiri's opinion was
           inconsistent with that of Dr. Van Gaasbeek who opined Macdonald's
20         ability to perform simple tasks was not impaired. The ALJ asserted Dr.
           Jahangiri was "equivocal and uncertain" in his opinion because he did not
21         assess how long Macdonald could sit, stand, or walk total in an 8-hour day
           or how often she would need breaks to walk around. The ALJ asserted the
22         standing and walking limitations contradicted Dr. Jahangiri's statement
           that Macdonald did not need a cane. (Tr. 26-27.) Contrary to the ALJ's
23         assertions, first, a treating doctor who treats a claimant's mental
           impairment (as Dr. Jahangiri did here…see Tr. 915 for example) is
24         qualified to comment on how that mental impairment affects the
           claimant's ability to perform work activity. See *Lester* at 833. The ALJ
25         improperly compared Dr. Jahangiri's opinion with that of Dr. Van
           Gaasbeek because Dr. Jahangiri opined Macdonald's ability to concentrate
26         would be affected by her combined physical and mental impairments,
           including pain and the side effects of her medications, while Dr. Van
27         Gaasbeek addressed only Macdonald's mental limitations. Dr. Jahangiri's
           opinion was not, as the ALJ asserted, "equivocal and uncertain" simply
28         because he addressed the abilities he was familiar with and declined to

                                              10

1     address those outside the scope of his treatment of Macdonald. The
      limitations Dr. Jahangiri assessed would cause an inability to sustain
2     competitive employment because of the need for extra breaks, time off
      task, and frequent absences, no matter how long Macdonald could sit,
3     stand, or walk in an 8-hour day. The ALJ erred in asserting that limitations
      in standing and walking are necessarily inconsistent with the lack of a
4     need for an assistive device. A limited ability to stand and walk could be
      related to pain and not have anything to do with an inability to balance
5     without a cane. The ALJ has not provided clear and convincing reasons to
      discount the opinion of this treating doctor.

6     ECF No. 16, pg. 17.

7

8            The record contains Dr. Jahangiri's treatment notes.  See CAR 907-17 (Exhibit

9     11F).  These records cover the period between December 2014 and February 2015.  See id.  On

10    December 11, 2014, the doctor observed plaintiff to be tearful and shaky.  See id. at 916.

11    Regarding plaintiff's anxiety, Dr. Jahangiri noted: "Will discuss more future visits, does have

12    support from her mother and son."  Id.  On January 14, 2015, Dr. Jahangiri observed an overall

13    normal appearance as well as appropriate mood and affect.  See id. at 912-13. On February 10,

14    2015, the doctor observed good hygiene, appropriate mood and affect, and that medication was

15    "working well" to control plaintiff's anxiety.  See id. at 909-10.

16           Dr. Jahangiri completed a medical source statement on January 30, 2017, in which

17    the doctor outlined his opinions as to plaintiff's functional capacity.  See id. at 1377-81 (Exhibit

18    16F).  Dr. Jahangiri notes that his first appointment with plaintiff was on December 11, 2014.

19    See id. at 1378.  The doctor diagnosed lower back pain and neck pain, right leg/thigh pain,

20    anxiety, "off and on panic attacks," and COPD with use of inhalers.  See id.  For clinical findings

21    supporting his opinions, Dr. Jahangiri noted:  low back pain, stiffness, radiation to the right leg,

22    cramping off and on in the legs and arms.  See id.  The doctor also noted swelling of both feet off

23    and on.  See id.  Additionally, Dr. Jahangiri noted "anxiety," but did not specify any particular

24    anxiety-related symptoms.  Finally, the doctor noted that plaintiff "gets short of breach on

25    exertion."  Id.

26    / / /

27    / / /

28    / / /

11

1          As to plaintiff's functional capacity, Dr. Jahangiri opined that plaintiff would

2  occasionally have problems with attention and concentration.  See CAR 1379.  The doctor opined

3  that plaintiff could only walk one city block, sit up to 20 minutes at a time and stand up to 30

4  minutes at a time.  See id.  Dr. Jahangiri stated that it would be "difficult to assess objectively"

5  how long in total plaintiff can sit, stand, and walk during an eight-hour workday.  Id.  The doctor

6  did not explain why he was unable to make an objective assessment.  Dr. Jahangiri also stated that

7  it was "difficult to make an objective assessment" regarding plaintiff's need for period of walking

8  around during an eight-hour workday.  Id.  Again, the doctor does not say why.  Dr. Jahangiri

9  additionally opined that plaintiff could perform jobs that permit shifting positions at will.  See id.

10  at 1380.  Finally, regarding limitations on reaching, handling, or fingering, the doctor stated he

11  was "unable to assess objectively," but does not explain why.  Id. at 1381.

12          Initially, the Court observes that the ALJ's citation to Dr. Gaasbeek's opinions as a

13  reason to discount Dr. Jahangiri's opinions is unfair.  If, as the ALJ correctly concluded, Dr.

14  Gaasbeek's opinions are not relevant to the time period at issue on the current claim, then Dr.

15  Gaasbeek's opinions are also not relevant to the ALJ's consideration of Dr. Jahangiri's opinions.

16          Nonetheless, the Court cannot say on the current record that the ALJ erred in

17  evaluating Dr. Jahangiri's opinions.  While opinions from a treating source are typically accorded

18  greater weight because of a presumed long-standing relationship, the record here reflects a short

19  treatment history spanning only a few months between December 2014 and February 2015.  More

20  significantly, as the ALJ noted, Dr. Jahangiri's opinions are equivocal and uncertain.  In the

21  January 30, 2017, medical source statement, Dr. Jahangiri repeatedly stated that he was unable to

22  render an objective opinion.  This can mean one of several things – either the doctor cannot

23  render an objective opinion due to a lack of supporting clinical findings, or the doctor can only

24  render an opinion based on plaintiff's subjective complaint.  Either way, Dr. Jahangiri's opinions

25  are, at best, minimally supported and were properly given less weight.

26  / / /

27  / / /

28  / / /

1   **C.      Credibility**

2              At Step 4, the ALJ also evaluated the credibility of plaintiff's statements and

3   testimony.  See CAR 22-24.  The Commissioner determines whether a disability applicant is

4   credible, and the court defers to the Commissioner's discretion if the Commissioner used the

5   proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.

6   1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad

7   v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v.

8   Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what

9   testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless

10  there is affirmative evidence in the record of malingering, the Commissioner's reasons for

11  rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v.

12  Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028,

13  1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

14             If there is objective medical evidence of an underlying impairment, the

15  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

16  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

17  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

18                    The claimant need not produce objective medical evidence of the
                [symptom] itself, or the severity thereof.  Nor must the claimant produce
19              objective medical evidence of the causal relationship between the
                medically determinable impairment and the symptom.  By requiring that
20              the medical impairment "could reasonably be expected to produce" pain or
                another symptom, the Cotton test requires only that the causal relationship
21              be a reasonable inference, not a medically proven phenomenon.

22              80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
                Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
23

24             The Commissioner may, however, consider the nature of the symptoms alleged,

25  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

26  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

27  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

28  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

1   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

2   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

3   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

4   claimant cooperated during physical examinations or provided conflicting statements concerning

5   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

6   claimant testifies as to symptoms greater than would normally be produced by a given

7   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

8   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

9           Addressing plaintiff's credibility, the ALJ first outlined lay witness statements

10  provided by plaintiff's friend, Gabrielle Samuels Valentine (referred to by the ALJ as "Gabrielle

11  Samuels" and discussed below).  See CAR 23.  The ALJ stated:

12          The claimant described similar complaints in a completed Function Report
            (Ex. 4E/1-14).  The claimant stated that she cares for a pet.  Her personal
13          cares diminished due to panic attacks.  She shops with friends but doesn't
            drive due to shaking; she uses public transportation and asks friends for
14          rides.  She doesn't go out much.  She is able to talk, hear, complete tasks,
            and follow instructions but nothing else.  She can only lift 4 pounds and
15          doesn't like a lot of people around.  She needs a prescription for sleep.
            She has trouble with personal care.  She can go shopping for food once a
16          week.  Due to panic attacks and stress, any changes in routine affect her.
            She has side effects associated with dizziness, drowsiness, hair loss,
17          shaking and stuttering.  However, the claimant indicated that she is able to
            handle changes in routine, that she was never fired by a previous
18          employer, and she does not wear reading glasses as indicated by her friend
            (Ex. 4E/12; 5E/11).  Further, the claimant indicated she can follow written
19          instructions pretty well, but her friend indicated that she does not do it
            well and that she needs help always (Ex. 5E/10) and that the claimant
20          could walk only 5 minutes but the claimant indicated she could walk for
            15 minutes before needing to rest (Ex. 4E/11).
21
            Between the two accounts, there were inconsistencies in the identified
22          functions affected by the claimant's illness or conditions (Ex. 4E/11;
            5E/10).  For example, the claimant reported that her vision was affected by
23          her condition, but her friend indicated the claimant's vision was not
            affected by her condition.  Additionally, the claimant reported having no
24          talking limitations and no limitation completing tasks, but her friend
            indicated the claimant's talking and completing tasks were affected by her
25          condition.  Also, while the claimant indicated having limitations with
            understanding, using her hands, and getting along with others, her friend
26          said that the claimant's understanding, using hands and getting along with
            others was not affected by her condition.  Due to the inconsistencies, I
27          look to the balance of the record to evaluate the claimant's symptoms.

28  / / /

14

While the claimant's self-reported statements to medical sources suggest limitations due to panic disorder, depression and anxiety, the mental status examinations are primarily normal except for the claimant's mood and her noted feelings of depression and anxiety.  For example, she indicated to medical sources that she was doing better and most days she felt well; she went on further to note that she rarely had days being down (Ex. 10F/4-5, 9, 15; 13F/17).  Sources noted that she is symptomatic but stable, and a mental source evaluation showed that she behaved appropriately; the exam was largely normal except for references to the claimant feeling anxious and depressed (Ex. 13F/16).  On April 27, 2015, the record showed a normal psychiatric profile with an appropriate mood and affect.  Similarly, on October 13, 2015, the mental status exam was largely normal except for references to the claimant feeling anxious and depressed with impaired judgment and insight (Ex. 13F/13).  Records go on to show that medication adjustments were made and that the claimant was primarily stable even though she was not entirely compliant with prescribed medication (Ex. 13F/6, 10).  Other records show the claimant has no pain in the muscles and joints and no limitation of range of motion including no paresthesias or numbness.  Further, it is noted that she has no depressive symptoms, no changes in sleep habits, and no changes in thought content, while a physical examination revealed full range of motion, no deformities, no edema, and no erythema (Ex. 12F/58-59, 65, 68).  By 2016, records show the claimant was stable and taking medication daily.  Further, she was doing some cooking and cleaning, grocery shopping, seeing a therapist weekly, and playing with animals (Ex. 13F/6-7).  She noted that she was doing okay except she felt a little down with low energy.  Subsequent mental status examination all showed essentially normal findings with the claimant being symptomatic but nonetheless stable (Ex. 13F/2, 3, 5).  Also consistent with a finding of a non-disabling mental condition is the claimant's expression of motivation to participate in bingo night (Ex. 14F/7).  As shown in the evidence listed above, anxiety, panic attacks and other mental conditions are better under current treatment and counseling.  Moreover, although there is a history of panic attacks, records also show the claimant tested positive for methamphetamine, marijuana, opiates, and benzodiazepines.  Objective findings do not show a disabling physical impairment.  For example, on June 4, 2015, a physical exam revealed mildly reduced cervical spine range of motion; although there was moderate pain with motion in the thoracic spine, the claimant walked normally.

On March 21, 2016, as noted, she demonstrated no pain in the muscles or joints or limitation of range of motion.  The physical exam revealed full range of motion, no deformities, and no swelling.  It was evident that the claimant did not need any assistive device to ambulate.

CAR 23-24.

The ALJ concluded ". . .the claimant's statements concerning the intensity, persistence, and limiting effect of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. at 24.

///

15

1        Citing <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487 (9th Cir. 2015), plaintiff argues the

2    ALJ erred by failing to identify "particular findings which were inconsistent with any of the

3    specific functional deficits Plaintiff described."  <u>See</u> ECF No. 16, pg. 19.  According to plaintiff:

4        Here, the ALJ has not specified which testimony he found not
         credible and has not provided clear and convincing reasons supported by
5        evidence in the record to support the credibility determination. Plaintiff
         explained that she cannot sit for more than about 20 minutes at a time,
6        needs breaks during the day to lie down, cannot lift any significant amount
         of weight, and has panic attacks when she is around people. (Tr. 47-53.)
7        The ALJ asserted the medical record showed mostly normal findings and
         asserted Macdonald's impairments improved with treatment. (Tr. 24.) In
8        making these assertions, the ALJ took instances of mild improvement out
         of context and failed to note other instances of worsened depression and
9        panic attacks (Tr. 1140, 1142), mood instability (Tr. 1131), worsened back
         pain (Tr. 950), and bilateral leg swelling (Tr. 947) consistent with the
10       limitations Macdonald described.

11       ECF No. 16, pg. 19.

12       The sole issue presented by plaintiff's argument is whether the ALJ adequately

13   linked the objective evidence to testimony found to be not credible.  The Court finds the ALJ did

14   so.  In <u>Brown-Hunter</u>, the Ninth Circuit held that an ALJ does not provide legally adequate

15   reasons for rejecting a claimant's testimony "by simply reciting the medical evidence in support

16   of his or her residual functional capacity determination."  806 F.3d 487.  The appellate court

17   concluded this method of analysis precluded meaningful review to determine a claimant's

18   testimony was not rejected arbitrarily.  <u>See id.</u>  The ALJ must "specify which testimony she finds

19   not credible, and then provide. . . reasons, supported by evidence in the records, to support that

20   credibility determination."  <u>Id.</u>  Ultimately, the Ninth Circuit determined the ALJ's error was not

21   harmless because it precluded meaningful review.  <u>See id.</u>

22       While the ALJ's discussion in this case may not be as specific as plaintiff may

23   wish, the Court finds it is sufficient to allow for a meaningful determination that plaintiff's

24   testimony was not rejected arbitrarily.  For example, plaintiff testified to a number of specific

25   limitations related to anxiety and other mental impairments.  As to such testimony, the ALJ cited

26   contrary objective medical findings, such as mostly normal clinical observations as well as

27   stability with medication.  The Court finds this analysis sufficient to show the ALJ's decision was

28   not arbitrary as to plaintiff's testimony regarding limitations associated with mental impairments.

1    Likewise, the decision is sufficient to allow the Court to conclude that the ALJ's reference to

2    normal physical examinations provided a non-arbitrary basis to reject plaintiff's specific

3    allegations of disabling physical limitations.

4          Moreover, the ALJ did more in this case than reject plaintiff's testimony based

5    solely on inconsistency with the objective medication evidence.  The ALJ also cited

6    inconsistencies between plaintiff's statements and those of her friend.  The Court finds this is a

7    valid additional reason, also supported by substantial evidence, to reject plaintiff's statements and

8    testimony.  By not offering any argument in this regard, plaintiff appears to agree.

9          **D.     Lay Witness Evidence**

10         Plaintiff argues the ALJ further erred at Step 4 by failing to properly consider lay

11   witness evidence offered by her friend, Gabrielle Samuels Valentine.

12         In determining whether a claimant is disabled, an ALJ generally must consider lay

13   witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

14   919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

15   testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

16   evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

17   F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

18   lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

19   When rejecting third party statements which are similar in nature to the statements of plaintiff, the

20   ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See

21   Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

22   rejection of a third-party family member's testimony, which was similar to the claimant's, for the

23   same reasons given for rejection of the claimant's complaints).

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

17

1            In this case, the ALJ considered lay witness evidence from plaintiff's friend,

2  Gabrielle Samuels Valentine (referred to by the ALJ as "Gabrielle Samuels").  See CAR 23.  The

3  ALJ stated:

4
> In a completed third-party function report, the claimant's friend Gabrielle
> Samuels reported that the claimant lives alone in a house (Ex. 5E/1-12).

5
> She visits the claimant and helps with rides and housecleaning 3 to 4 times
> per week.  She noted that the claimant's abilities to work are impaired by a

6
> lack of focus and severe panic attacks; her legs give out; she has manic
> episodes and mental instability; she shakes uncontrollably. And she has a

7
> hard time walking and sleeping, with and without medication.  Ms.
> Samuels indicated that the claimant cares for cats by feeding them and

8
> changing their litter box.  She can attend to personal care but for no longer
> than five minutes.  She also takes no longer than five minutes to prepare

9
> her own meals, and personal care is maintained with reminders from
> family and friends.  Apparently, she indicated the claimant was a chef who

10
> cooked for hours every day, but she is no longer able to maintain that
> activity both physically or mentally.  She indicated the claimant is able to

11
> go out twice a week primarily to doctor's appointment, and she doesn't
> drive due to panic attacks.  She shops at stores one day per week.  She is

12
> able to count change, handle a savings account, and use checkbooks and
> money orders.  Her ability to function is limited due to her back and legs

13
> and mental and emotional illnesses.  She indicated the claimant has trouble
> lifting, squatting, bending, standing, reaching, walking, sitting, kneeling,

14
> talking, stair climbing, remembering, completing tasks, and concentrating.
> She can walk five minutes before needing to rest, and she needs to rest

15
> about 5 to 10 minutes before she can resume walking.  She is able to
> follow spoken instructions better with help.  She was fired due to

16
> misunderstandings from a prior employer.  She has a horrible time
> handling stress and is unable to handle changes in routine due to her

17
> physical and mental conditions.  She entertains fears, including death to
> the extent she is unable to sleep or go out alone.  She wears reading

18
> glasses.  Pain medication causes dizziness and drowsiness, and
> psychotropic medications cause hair loss, tooth loss, shaking, and

19
> stuttering.

20      CAR 23.

21            As noted above in the context of the ALJ's credibility analysis, the ALJ concluded

22  "there were inconsistencies. . . ."  Id.  While the ALJ found plaintiff's statements and testimony

23  were not entirely credible, the ALJ made no specific findings with respect to the lay witness

24  evidence other than to note inconsistencies with plaintiff's statements and testimony.  Plaintiff

25  faults the ALJ's analysis for this reason.

26  / / /

27  / / /

28  / / /

1    According to defendant, the ALJ did not err because inconsistency with plaintiff's

2   testimony is a reason germane to the lay witness, and because <u>Valentine</u> permits the ALJ to reject

3   the lay witness testimony for the same reason cited for rejecting plaintiff's testimony, in this case

4   inconsistency.  <u>Valentine</u> is inapplicable here because the lay witness testimony is not similar to

5   plaintiff's testimony.  Nonetheless, defendant is correct that inconsistency with plaintiff's

6   testimony is a reason germane to Ms. Valentine to reject her testimony as well.  <u>See</u> <u>Lewis v.</u>

7   <u>Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001) (holding that inconsistency with the claimant's own

8   testimony is a germane reason to reject lay testimony).

9      **E.**     **<u>Step 4 Findings</u>**

10    At Step 5, the ALJ determined plaintiff is not disabled because she can perform

11   her past relevant work.  <u>See</u> CAR 27.  The ALJ stated:

12
13    The vocational expert testified the claimant has past work as a Blood and
Plasma Lab Assistant, Dictionary of Occupational Titles (DOT) 078.687-
010, light exertion, skilled, SVP-6; Receptionist, DOT 237.367-038,
14    sedentary exertion, semi-skilled, SVP-4; Office Assistant, stock control
clerk, DOT 219.387-030, light exertion, skilled, SVP-5.  The claimant
15    performed these past jobs long enough to learn how to do them at
substantial gainful activity levels (Ex. 4D; 3E).

16    In comparing the claimant's residual functional capacity with the physical
and mental demands of this work, the undersigned finds that the claimant
17    is able to perform it as actually and generally performed.  While the
claimant has severe impairments, treatment records show improvement
18    overall with increased functioning.  She alleged panic attacks, but there
was little evidence of recurrent complications due to anxiety attacks and
19    panic attacks.  Although she had some residual depressive and anxiety
symptoms, medication improved her function, appetite and ability to sleep.
20    She essentially lives alone, drives, and is able to manage her finances and
medical care.  With the exception of her family physician, all other
21    medical source opinions fall within the realm of the above residual
functional capacity assessment.  As I found the family physician's opinion
22    less than consistent with the evidence showing good neurological, sensory
and reflex functioning, no loss of cognition, intelligence or memory
23    function, and intact ability to concentrate, understand, and carry out
simple, detailed and complex tasks, the overall record supports the
24    claimant retains the residual functional capacity to perform her past
relevant work as a Blood and Plasma Lab Assistant.  I note that in making
25    this finding, the claimant did not stop performing SGA [substantial gainful
activity] as a blood and plasma lab assistant due to any purported
26    disability, but rather she was laid off from work.

27    CAR 27.

28   / / /

19

1    Plaintiff argues that, in making this finding, the ALJ erred in two ways.  First,

2   plaintiff contends the ALJ erred in concluding plaintiff can perform her past relevant work, which

3   requires reasoning level 3, because the ALJ also concluded plaintiff has limitations consistent

4   with reasoning level 1.  Second, plaintiff argues hypothetical questions posed to the vocational

5   expert were improper because they failed to account for limitations opined by Drs. Jahangiri and

6   Van Gaasbeek.

7    1.    Reasoning Level

8    Referencing the Dictionary of Occupational Titles (DOT), plaintiff argues her past

9   relevant work as a lab assistant is light, skilled work which requires a reasoning level of 3.  See

10   ECF No. 16, pg. 21.  Plaintiff further contends that reasoning level 3 requires an ability to

11   "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or

12   diagrammatic form" and "[d]eal with problems involving several concrete variables in or from

13   standardized situations."  Id. at 22.  Plaintiff next states the ALJ's residual functional capacity

14   finding is consistent with reasoning level 1 – not 3 – because plaintiff is "limited to tolerating

15   occasional changes in a routine work setting."  Plaintiff concludes from this that the ALJ erred by

16   determining she can return to work requiring a reasoning level higher than the ALJ's own residual

17   functional capacity finding allows.

18    Plaintiff's argument that the ALJ failed to address a potential inconsistency with

19   the DOT is meritless.  The Court agrees with defendant that the ALJ had no duty to do so because

20   the ALJ concluded plaintiff could return to her past relevant work as it was actually performed.

21   See 20 C.F.R. § 404.1560(b)(2); Wolcott v. Colvin, 2016 WL 3549603, at *6 (E.D. Cal. 2016)

22   ("When determining that a claimant can perform his or her prior work as it was actually

23   performed, an ALJ is nor required to consult the DOT. . . .").  To the extent the ALJ committed

24   any error by failing to address inconsistency between the DOT and plaintiff's ability to return to

25   her past relevant work as it is generally performed, such error is rendered harmless because the

26   ALJ also found plaintiff could return to her past relevant work as it was actually performed.

27   / / /

28   / / /

1                  2.       <u>Hypothetical Questions</u>

2                Plaintiff argues the ALJ erred in relying on vocational expert testimony in

3 response to hypothetical questions which failed to account for limitations assessed by Drs.

4 Gaasbeek and Jahangiri.  This argument, which is derivative of plaintiff's arguments relating to

5 the ALJ's evaluation of these doctors' opinions, is rejected for the reasons discussed above.  The

6 ALJ did not err by failing to include limitations assessed by Drs. Gaasbeek and Jahangiri because

7 their opinions were properly rejected.  In this case, vocational expert's testimony based on

8 hypothetical questions which included limitations assessed by the credited medical sources

9 constitutes substantial evidence supporting the ALJ's conclusion at Step 5.

10

11                                         **IV.  CONCLUSION**

12                Based on the foregoing, the court concludes that the Commissioner's final decision

13 is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

14 ORDERED that:

15                  1.       Plaintiff's motion for summary judgment (ECF Nos. 16 and 18) is denied;

16                  2.       Defendant's motion for summary judgment (ECF No. 17) is granted;

17                  3.       The Commissioner's final decision is affirmed; and

18                  4.       The Clerk of the Court is directed to enter judgment and close this file.

19

20

21 Dated:  June 2, 2020

22                                                _____

23                                                DENNIS M. COTA
                                               UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28